UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**KEITH ALLEN WILSON**                                                  **PLAINTIFF**

v.                                                       **CIVIL ACTION NO. 3:15-CV-P456-CRS**

**ELAINE SMITH** *et al*.                                             **DEFENDANTS**

**MEMORANDUM OPINION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Plaintiff Keith Allen Wilson, currently incarcerated at Kentucky State Reformatory (KSR). The Court has granted Plaintiff leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594 U.S. 199 (2007). For the reasons set forth below, the action will be dismissed.

        **I.**        **FACTUAL ALLEGATIONS**

In his Complaint (DN 1), Plaintiff brings suit against five Defendants – Dr. Henson, a former doctor at KSR; Dr. Frederick Kemen, a doctor at KSR; Elaine Smith, a nurse practitioner at KSR; Dawn Patterson, a registered nurse at KSR; and Cookie Crews, the Health Services Administrator at KSR. Plaintiff sues these five Defendants in their official and individual capacities.

Plaintiff states that he brings this action because he did not receive "adequate medical care in a timely manner" from the Defendants. He specifically states that Defendants failed to provide him with adequate medical care from June 23, 2014, to April 2015.

Plaintiff alleges that on June 23, 2014, he saw Dr. Henson for "swelling and severe pain in and on top of his right foot." He alleges that Dr. Henson told him that he was suffering with

irritation from his "state boots." He alleges that Dr. Henson told him to wrap his foot "with an ace bandage, put ice on it, and elevate it." He states that Dr. Henson did not give him anything for pain. He states that as result of Dr. Henson's diagnosis and instructions, "the swelling went down but the pain continued."

Plaintiff alleges that his foot swelled again in November 2014 and that he was seen by Dr. Kemen on November 12, 2014. He alleges that Dr. Kemen examined his foot and diagnosed him with gout. He alleges that Dr. Kemen prescribed him "Indomethacin" for pain to be taken for ten days. Plaintiff alleges that the medicine helped with his pain but that because he received no additional pain medicine, he was then forced to "buy pills off the prison yard to deal with [his] pain."

Plaintiff alleges that in December 2015, he was seen by "the Nurse Practitioner." He states that his nurse practitioner arranged for the x-ray of his foot which showed that he had degenerative arthritis. Plaintiff alleges that she then told him that the only medicine that she could prescribe for him for pain was "Indomethacin." Plaintiff alleges that when he then told her that he had Hepatitis C, she told him that she could not give the drug "because it was very dangerous" for him. Plaintiff alleges that she then told him that there was nothing else she could give him for pain and to "put ice on it and that the pain was not going to go away."

Plaintiff alleges that he filed a medical grievance on February 9, 2015, in which he requested to be seen by an orthopedic doctor. He alleges that Dawn Patterson, a registered nurse at KSP, attempted to conduct an "informal resolution" of his grievance but that she never spoke to him because she tried to visit him in the wrong dormitory. Plaintiff alleges that he has exhausted the entire grievance process and that the "medical director's final conclusion was that I am not being treated with medication." Plaintiff claims that, although he is now on

medication, that does not justify the "deliberate indifference and negligence of correct care for the 10 months of pain and suffering [he] went thru [sic]."

The Court construes these allegations as claims for deliberate indifference to a serious medical need in violation of the Eighth Amendment and as a state-law claim for negligence against all five Defendants in both their official and individual capacities. As relief, Plaintiff seeks monetary and punitive damages.

## II.     STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)

(citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc.* v. *Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

#### A. 42 U.S.C. § 1983

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Absent either element, a § 1983 claim will not lie. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### 1. Official-Capacity Claims

Under the Eleventh Amendment to the U.S. Constitution, a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-20 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782, (1978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)); *see Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 U.S. App. LEXIS 4709 at *2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

The Eleventh Amendment specifically bars damages claims against state officials sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *McCrary v. Ohio Dep't of Human Servs.*, No. 99-3597, 2000 U.S. App. LEXIS 19212 at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity); *Boone v. Kentucky*, 72 F. App'x 306, 307 (6th Cir. 2003) ("[Plaintiff]'s request for monetary relief against the prosecutors in their official capacities is deemed to be a suit against the state and also barred by the Eleventh Amendment."). Further, state defendants sued in their official capacities for monetary damages are not considered "persons" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (concluding that a state, its agencies,

and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim).

Accordingly, because all Defendants are state officials, the Court will dismiss the official-capacity claims against them for monetary damages for failure to state a claim upon which relief may be granted.

### 2. Individual-Capacity Claims

The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation and quotation marks omitted)). A deliberate-indifference inquiry has two components, one objective and one subjective. A plaintiff satisfies the objective component by proving that he has a medical need that is "sufficiently serious." *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)). "A "serious medical need" exists where, objectively, the failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000). A plaintiff satisfies the subjective component by proving "facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*. (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). In short, "[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm[.]" *Id*. (quoting *Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003)). The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a

> prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*. However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

*Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The Sixth Circuit has also held that "[a] plaintiff alleging deliberate indifference must show more than negligence or misdiagnosis of an ailment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). A plaintiff must also show that his claim involves more than a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment. *Westlake v. Lucas*, 537 F.2d at 860, n.5.

### a. Defendants Dr. Henson, Dr. Kemen, and Smith

Plaintiff alleges that Dr. Henson misdiagnosed his foot ailment as "irritation" from "state boots" instead of degenerative arthritis and failed to prescribe him anything for pain. Here, even if the Court assumes that Plaintiff's arthritis pain was sufficiently serious to satisfy the objective element, the conduct he alleges – misdiagnosis and a failure to provide pain medication on one occasion – does not constitute deliberate indifference to his medical needs.

Plaintiff alleges that Dr. Kemen misdiagnosed his foot ailment as "gout" and prescribed him pain medication for only ten days forcing him to illicitly obtain pain medication from the "prison yard." He also alleges that the pain medication which Dr. Kemen prescribed for him was dangerous for him because he has Hepatitis C and that Dr. Kemen would have known this if he had checked Plaintiff's medical records. However, as stated above, a misdiagnosis and difference of opinion regarding medical treatment are not sufficient to state a claim of deliberate indifference. In addition, the Sixth Circuit has held that a physician's failure to check medical history records is "negligence at most." *Sanderfer v. Nichols*, 63 F.3d 151, 152 (6th Cir. 1995).

Finally, although Plaintiff does not specifically mention Defendant Smith, the nurse practitioner at KSR, in the allegations section of his Complaint, if the Court liberally construes

7

Plaintiff's Complaint, it is plausible that she is the unnamed nurse practitioner who Plaintiff alleges first x-rayed him and diagnosed him with degenerative arthritis. According to Plaintiff, she also told him that she could not give him any pain medication because the only medication she could prescribe - the one prescribed by Dr. Kemen - was dangerous to him since he had Hepatitis C. The Court finds that Plaintiff's allegations against Defendant Smith do not rise to the level of deliberate indifference – especially since Plaintiff saw Defendant Smith only once and on that occasion and she apparently x-rayed him, correctly diagnosed him, and declined to give him pain medication that would be dangerous to him.

In sum, the Court finds that the allegations set forth by Plaintiff against these Defendants do not show that they treated him with deliberate indifference. Rather, the allegations establish that Plaintiff was seen and treated by three different medical practitioners over the 10-month period about which he complains and that, by the end of that period, he was receiving the appropriate type and amount of pain medication for his diagnosis of degenerative arthritis. These allegations simply do not show that the medical care that Plaintiff received was so inadequate as to be tantamount to receiving "no treatment at all." Therefore, the Court will dismiss Plaintiff's individual-capacity claims against Defendants Dr. Henson, Dr. Kemen, and Smith for failure to state a claim upon which relief may be granted.

### b. Defendant Patterson

Plaintiff seems to allege that Defendant Patterson, a registered nurse at KSR, is liable for his claim under § 1983 because she was assigned to resolve his grievance through "informal resolution" but failed to do so because she twice tried to visit him in the wrong dormitory. The Plaintiff, however, cannot maintain a claim against Defendant Patterson for her actions related to his grievance. This is because there is "no constitutionally protected due process interest in

unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). Thus, "[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his or her grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."). Therefore, Plaintiff's § 1983 claims against Defendant Patterson concerning the handling of his grievance will bedismissed for failure to state a claim upon which relief may be granted.

      **c. Defendant Crews**

Plaintiff does not specifically mention Defendant Crews, the Health Services Administrator at KSR, in the allegations section of his Complaint. However, to the extent that Plaintiff filed a claim against Defendant Crews because he believes she fills a supervisory role at KRS and should be liable for the actions of her subordinate, the Court notes that the doctrine of *respondeat* superior does not apply in § 1983 actions to impute liability to supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor

encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Thus, because Plaintiff has failed to allege any facts showing that Defendant Crews directly participated in any unconstitutional conduct, the individual-capacity claims against her must be dismissed for failure to state a claim upon which relief may be granted.

### B. State-Law Claim

In his Complaint, Plaintiff also mentions "negligence," which is a state-law claim. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Having determined that the § 1983 claims, which provide the jurisdictional basis of this suit, should be dismissed, this Court declines to exercise supplemental jurisdiction over any remaining state-law claim. *See* 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The state-law claim will be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss this action by separate Order.

Date: November 4, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc: Plaintiff, *pro se*
      Defendants
      General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4411.011